IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CRIMINAL ACTION NO. 05-53 |
| ) | |
| AHMED OMAR ABU ALI, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Defendant's Motion For Relief From Conditions of Confinement (hereinafter "Def.'s Mot."). This case concerns allegations by the government that the Defendant, Ahmed Omar Abu Ali, conspired to provide and did provide material support and resources to terrorists and a foreign terrorist organization, al-Qaeda, contributed services to the foreign terrorist organization, and received funds and services from the foreign terrorist organization. The issue before the Court is whether a defendant, who is a pre-trial detainee, may ask a court to mandate changes in the special administrative measures (hereinafter "SAMs") imposed at the request of the Attorney General to modify aspects of his confinement when the defendant has not exhausted the administrative appeals process for challenging the SAMs. Defendant maintains that this Court has the authority to set the terms and conditions of his confinement, and claims that because the SAMs "interfere" with his "right to participate in the

preparation of his own defense" and his "right to secure and effective communication with counsel," this Court should mandate changes in Defendant's confinement conditions. The Court finds that because Defendant has not availed himself of the administrative appeals process at his disposal and because the SAMs do not infringe on his due process rights to participate in the preparation of his defense, his motion must be denied.

## I. BACKGROUND

Defendant has been held at the Alexandria Detention Center since February 2005, when he was brought to the United States from Saudi Arabia and indicted on six terrorism-related counts. On September 8, 2005, Defendant was indicted on an additional three counts, including conspiracy to assassinate the President of the United States, conspiracy to commit aircraft piracy, and conspiracy to destroy aircraft. On or about March 4, 2005, the Attorney General of the United States, under authority granted to him in 28 C.F.R. § 501.3, requested that the Director of the United States Marshals Service impose SAMs upon the conditions of the Defendant's confinement. Government's Omnibus Response to Defendant's Non-Dispositive Pre-Trial Motions (hereinafter "Gov't's Resp."), at 8-9, Exh. 1. The Attorney General concluded that it was necessary to "restrict Abu Ali's access to the mail, the media, the telephone, and visitors" because "there is substantial risk that [Defendant's] communications or contacts

2

with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons." *Id*.

On May 9, 2005, Defendant filed a Motion for Relief from Conditions of Confinement, asking this Court to direct that Defendant "be released from solitary confinement into normal prison conditions[;] be given a table or desk to work on and a chair inside his confinement area or cell; be given a laptop computer and portable printer, to be provided by the defense; have the right to receive and retain materials from counsel, including CD-ROMs, without having them inspected, searched, or taken from him; have telephone access to his attorneys without having his end of the call overheard, regardless of whether Mr. Ali or his attorney initiates the call; have freedom from searches and/or seizures of his books, papers, computer, and other defense preparation materials in his cell; have freedom from recordings of conversations between Mr. Ali and his counsel; and be provided any further relief as ordered by the Court from any other conditions, and be allowed to read religious text[s] in Arabic [i]ncluding, but not limited to, broader access to mass communications, mail and visitors." Def.'s Mot. at 12-13.  The Defendant has subsequently modified his request, and asks only "that he be released from solitary confinement into normal prison conditions, and that the Court order the SAMs to be lifted" since "any other requests that were made in the original motion . . .

are not representative of the defendant's needs." Defendant's Reply to Government's Omnibus Response to Defendant's Non-Dispositive Pretrial Motions, at 1(hereinafter "Def.'s Reply").

## II. DISCUSSION

**A. Standard of Review**

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (2003). Thus, where a prisoner "filed an administrative grievance" protesting aspects of his confinement, but "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief," the Supreme Court upheld the decision of a district court to dismiss the prisoner's federal action against correction officers at the state prison where he was incarcerated -- even though the administrative process could not yield the monetary relief the plaintiff sought. *Booth v. Churner*, 532 U.S. 731, 734-735 (2001); *see also Sallee v. Joyner*, 40 F. Supp. 2d 766 (E.D. Va. 1999). The Court ruled that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." *Booth*, 532 U.S. at 741.

**B. Analysis**

The Court holds that because the Defendant has not availed himself of the administrative appeals process at his disposal and because the SAMs do not infringe on his due process rights to participate in the preparation of his defense, his motion must be denied.

**1. Since Defendant has not exhausted his ability to challenge his conditions of confinement through the Administrative Remedy Program, the issue is not ripe for this Court's consideration.**

Although Defendant may appeal the SAMs through an administrative appeals process, he has not exhausted that remedy.

Under Title 28 of the Code of Federal Regulations, Section 501.3(a), the Attorney General may request that the Director of the Bureau of Prisons "authorize the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a) (2005). Further,

> "[t]hese special administrative measures ordinarily may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism."

*Id*. The regulation also allows the Attorney General to order "appropriate procedures for the monitoring or review of

communications between [an] inmate and attorneys or attorneys' agents who are traditionally covered by the attorney-client privilege" if "based on information from the head of a federal law enforcement or intelligence agency that reasonable suspicion exists to believe that a particular inmate may use communications with attorneys or their agents to further or facilitate acts of terrorism." *Id*. § 501.3(d).

However, the regulation does not confer blanket authority to modify an inmate's confinement indefinitely: any SAMs imposed under the regulation may not exceed one year. *Id*. § 501.3(c). In addition, "[t]he affected inmate may seek review of any special restrictions imposed in accordance with paragraph (a) of this section through the Administrative Remedy Program, 28 CFR part 542." *Id*. § 501.3(e). Moreover, this court has previously said that, "[i]nmates confined at institutions operated by the Bureau of Prisons (BOP) must grieve their claims relating to *any aspect of their confinement* through the Administrative Remedy Program." *Sallee*, 40 F. Supp. 2d at 767 (emphasis added).

The Administrative Remedy Program establishes an appeals process for an inmate who wishes to challenge "an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). To appeal, an inmate must first "present an issue of concern informally to staff;" if that fails to resolve the issue, the regulation permits the inmate to submit a "Request for Administrative Remedy" to the Warden. *Id*. § 542.13. If the

inmate is not satisfied, he may appeal to the Regional Director of the Bureau of Prisons, and may subsequently appeal that official's ruling to the General Counsel of the Bureau of Prisons, which constitutes "the final administrative appeal."*Id*. § 542.15.

In two other cases where inmates charged with terrorism-related offenses challenged SAMs imposed against them at the request of the Attorney General, courts concluded that because they had not exhausted the administrative appeals process, the plaintiffs' claims were not yet ripe for a judicial challenge. In *Yousef v. Reno*, a prisoner convicted of terrorism charges sought declaratory, injunctive, and monetary relief against the Attorney General and others, alleging that the SAMs imposed against him violated his rights under the First, Sixth, and Eighth Amendments. *Yousef v. Reno*, 254 F.3d 1214, 1216 (10th Cir. 2001). There, the SAMs "restricted Mr. Yousef's access to mail, telephone, media, and visitors and limited his carrying of religious materials, recreation, and exercise time." *Id*. at 1216. Although Yousef filed an informal complaint and a formal petition protesting the SAMs, the Tenth Circuit held that because he did not undertake the "required appeal to the Regional Director and 'final administrative appeal' to the General Counsel," he "clearly could not . . . maintain that he exhausted the administrative remedies provided in § 542.15(a)." *Id*. at 1222. Accordingly, the appellate court affirmed the district

7

court's dismissal of the plaintiff's claim and remanded the case to the district court "without prejudice to allow for exhaustion of his administrative remedies."  *Id*. at 1222-1223.  Similarly, another district court noted, "a judicial challenge to the SAM that currently covers plaintiff could not be mounted at this time as plaintiff concedes that he has failed to exhaust his administrative remedies in regards to the existing SAM."  *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 17 n.5 (D.D.C. 2003).

Here, the Attorney General informed the Director of the United States Marshals Service on or about March 5, 2005, of his conclusion that in light of the terrorism charges against Defendant and "information provided to [him] of Abu Ali's proclivity for violence . . . that there is substantial risk that his communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons."  Gov't's Resp., Exh. 1.  Accordingly, he requested that the Director "implement SAM to restrict Abu Ali's access to the mail, the media, the telephone, and visitors" for one year.  *Id*.  However, he made no order that Defendant's attorney-client communications be monitored under 28 C.F.R. 501.3(d), and noted repeatedly that the section of the memorandum requesting SAMs titled "Legally Privileged Telephone Calls" "does not allow monitoring of attorney/client-privileged communications." Gov't's Resp., Exh. 1.

As discussed *supra*, on May 9, 2005, the Defendant filed a motion before this Court seeking to have the SAMs lifted. However, the Government maintains that since the imposition of the SAMs in March 2005, the Defendant has "taken no action to exercise his rights under the Administrative Remedy Program." Gov't's Resp. at 9.  Defendant makes no claim in his original Motion, Supplementary Filing, or Reply that he has even attempted to avail himself of the administrative appeals process available to him.

The Defendant does note that on March 5, 2005, shortly after his arrival at the Alexandria Detention Center, he completed an "Inmate Request Form," on which he wrote, "I kindly ask to be allowed regular phone calls to my family and lawyers, and visits from my family." Def.'s Reply, Exh. 1.  An official of the Detention Center wrote back to him two days later, "[t]here are guidelines to be followed according to the Special Administrative Measures governing your case.  As these issues are addressed by your attys [sic] and the government you will be informed." *Id*. Under the Administrative Remedy Program, an inmate must first "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13. Regardless of whether Defendant's "Inmate Request Form" is properly construed as either the "informal resolution" mandated by statute as an inmate's first level of appeal or the subsequent "Request for Administrative Remedy," the Defendant makes no claim

to have pursued the succeeding options available to him.[1]

If his informal request is denied, an inmate is entitled to seek the review of the detention facility's Warden.  *Id*. § 542.14.  He may then appeal that decision to the Regional Director of the Bureau of Prisons, whose review the inmate may also appeal, to the General Counsel of the Bureau of Prisons.  *Id*. § 542.15.

Defendant has not undertaken any of the administrative remedies available to him to appeal the SAMs that govern the conditions of his confinement.  Thus, the appropriate course of action for this Court is to dismiss Defendant's Motion without prejudice.

**2.  The SAMs do not violate Defendant's due process rights because they have not and will not restrict Defendant's ability to help prepare his own defense**.

Although it may be sufficient to dismiss this motion solely on the basis that the Defendant has not exhausted the administrative appeals process available to him, the Court also finds that the SAMs do not violate Defendant's due process rights

---

[1] The regulation states that the Administrative Remedy Request is to be completed on Form BP-9.  28 C.F.R. § 542.14.  Although the "Inmate Request Form" completed by the Defendant bears a different identifying serial number, whether or not his request constituted an "informal request" or the "Request for Administrative Remedy" does not affect the court's conclusion, since Defendant did not pursue the additional levels of appeal available to him.

because they have not and will not restrict his ability to help prepare his own defense.  As stated above the Court concludes that the issue is not ripe for its consideration since Defendant has not exhausted the administrative remedies available to him.  However, the Court takes notice of the fact that if Defendant were to proceed with the administrative appeals process now, it could take as long as 90 days for the BOP to evaluate his appeal -- and perhaps as long as 160 days, if the BOP sought extensions of the deadlines at each level of appeal.  *Id.* § 542.18.  Since Defendant's trial is scheduled to begin on October 27, 2005, and opposing counsel expect it will last about three weeks, Defendant's claim -- that the SAMs infringe upon his right to help prepare his own defense -- would be moot by the time it became ripe.  For that reason, the Court believes it is appropriate to explain why it finds that the SAMs are reasonable and do not interfere with the Defendant's due process rights.

Unlike the plaintiffs in both *Yousef* and *Al-Owhali*, Defendant in this case is merely a pre-trial detainee, and has not been convicted of a crime.  In another case involving terrorism-related charges, a pre-trial detainee "tried to challenge [the withholding of an American news magazine from him under SAMs] through administrative channels, but the government successfully took the position that administrative remedies were unavailable to [him], apparently because he had not yet been sentenced."  *U.S. v. Reid*, 369 F.3d 619, 622 (1st Cir. 2004) (internal citations omitted).  However, as discussed above, that

11

is not the government's position in this case.

Here, the government asserts that because "the defendant is a pretrial detainee rather than a convicted inmate does not diminish the reasonableness of the SAM in this case." Gov't's Resp. at 14. Supreme Court precedent supports this conclusion. The Court has held that a county jail's practice of denying contact visits to pre-trial detainees and randomly searching their cells did not infringe their due process rights. *Block v. Rutherford*, 468 U.S. 576 (1984). There, the Court held that it made no difference that the practice applied to pre-trial detainees, and not convicted criminals. *Id*. at 587.

The Court also looks to the plain language of the statute, and determines that the "regulations of the Attorney General authorizing the issuance of SAMs explicitly comprehended their applicability to pre-trial detainees." *U.S. v. Reid*, 214 F. Supp. 2d 84, 90-91 (D. Mass. 2002) (citing 28 C.F.R. § 500.1(c)). As the term "inmate" is used in the regulation authorizing the Attorney General to direct the implementation of SAMs, "inmate means all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including persons charged with or convicted of offenses against the United States; D.C. Code felony offenders; and persons held as witnesses, detainees, or otherwise." 28 C.F.R. § 500.1(c). Moreover, as noted *supra*, Defendant does not even address the fact that he has not attempted to pursue modifications to his confinement conditions through the administrative appeals process available to him.

In its consideration of this issue, the Court is mindful that "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979).  However, "[o]nce the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Id*. at 537.  Since the government has "legitimate interests that stem from its need to manage the facility in which the individual is detained," such as "maintain[ing] security and order at the institution . . . [r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment." *Id*. at 540.  "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id*. at 539.  The question presented here is whether the restrictions upon Mr. Abu Ali's confinement were imposed for the purpose of punishment or whether the restrictions are incidental to some other legitimate governmental purpose.  *See Bell* 441 U.S. at 538.

To answer this question, the Court must apply a four-factor analysis and evaluate: 1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," 2) "whether there are alternative means of exercising the right that remain open to prison inmates," 3) the "impact accommodation of the

asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and 4) the "absence of ready alternatives."  *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

In *U.S. v. El-Hage*, the Second Circuit applied the *Turner* factors when it considered a pre-trial detainee's challenge to SAMs in a terrorism case and concluded that the SAMs were "reasonably related to the government's asserted security concerns."  213 F.3d 74, 82 (2d Cir. 2000).  There, the government argued that the SAMs imposed on the detainee were for the regulatory purpose of preventing El-Hage from communicating with his unconfined co-conspirators, and thereby from facilitating additional terrorist attacks by those co-conspirators.  The court noted that the government "supported these assertions with ample evidence of the defendant's extensive terrorist connections."  *Id*. at 81.  The court then concluded that because the alternative to the detainee's confinement conditions would place him in the general prison population, and "his dangerousness arises out of the information he might communicate to others, it was *reasonable* for the government to find that alternative unacceptable."  *Id*. at 82 (emphasis added).

The government maintains that it "imposed the SAM in this case to further the legitimate and compelling purpose of preventing future terrorist acts."  Gov't's Resp., at 13.  The government's response includes a lengthy explanation of the SAMs

in this case viewed in light of the *Turner* factors.  Gov't's Resp., at 12-18.  First, the government establishes a valid, rational connection between the SAMs and the government's legitimate national security interest put forward to justify them.  The government notes that al-Qaeda trains its followers to use a variety of means to communicate with their confederates from prison.  Although Defendant's alleged connection to al-Qaeda remains an unproven allegation, the SAMs are intended to restrict Defendant's communications "with other violent jihadists outside the jail."  *Id*. at 13.  Second, the government explains that there are no "alternative means" to Defendant's "restrictions on communications and others . . . that would not undermine the basis for the SAM."  *Id*. at 15.  Although he may not communicate with other inmates or non-family visitors, Defendant retains the ability to meet with and talk to his attorneys and family members.  *Id*.  Third, the government makes clear that special accommodations would "impose unreasonable additional burdens on the resources of the Alexandria Detention Center and the FBI."  *Id*.  The need to isolate Defendant from the general population of the detention center and the staffing requirements surrounding his visits and phone calls with attorneys and family members require a significant use of staff; increasing the frequency of visits or the scope of allowed visitors would further tax these resources.  *Id*. at 15-17.  Fourth and finally, the government argues that there are no ready alternatives to the current conditions of confinement.

With regards to the fourth factor -- alternatives to the SAMs -- the Court takes notice that the government has not been inflexible with the implementation of the SAMs upon Defendant. The Attorney General's request for the SAMs allowed Defendant a minimum of one phone call per month with members of his immediate family, "unless otherwise agreed upon by USMS/BOP/DF, FBI and USA/EDVA to allow more calls." Gov't's Resp., Exh. 1. The government has allowed Defendant more phone calls with his family. In addition, the Court notes that the government offers that it "is prepared to work with officials at the Alexandria Detention Center and the FBI to assess the feasability of providing the defendant with access to other religious materials, provided they can first be evaluated to determine if they contain coded messages or other inappropriate content." Gov't's Resp., at 17. This suggests to the Court that the government's implementation of the SAMs has been reasonable, and is not punitive in nature.

Finally, as the Government observes in its response, the SAMs imposed upon Defendant are not unique. Gov't's Resp., at 14. Terrorism and espionage matters present special security concerns because of the risk posed by the possible exchange of information by a defendant in such a case with someone outside of the detention center.[2] Accordingly, measures similar to those

---

[2] For example, Brian Patrick Regan, a defendant in an espionage case, apparently attempted to use coded communications to enlist the help of others outside the jail to find and destroy classified material he had hidden before government investigators

16

imposed upon Mr. Abu Ali have previously been instituted for defendants charged in the Eastern District of Virginia in cases involving terrorism and espionage, including Zacarias Moussaoui and John Walker Lindh, both of whom were indicted on terrorism-related charges, and Brian Patrick Regan and Robert Hanssen, both of whom were indicted on espionage charges.  *Id.*

Since the statute indicates that SAMs may be imposed on pre-trial detainees and the government has established that the particular SAMs imposed on Defendant are not unreasonable in light of the *Turner* factors, the Court concludes that the SAMs do not impair Defendant's ability to participate in the preparation of his own defense.

### III. CONCLUSION

Because Mr. Abu Ali has not exhausted his administrative remedies to challenge the Special Administrative Measures, the Court denies his Motion for Relief From Conditions of Confinement.

Moreover, the Court observes that if it were necessary to reach the merits of his motion, the Court would not grant relief from the conditions of his confinement.  The specific remedies the Defendant seeks fall into two groups: amenities that are not available to any inmates, let alone a defendant in a trial with national security implications, and relief from special

---

could discover it.  *U.S. v. Regan*, 281 F. Supp. 2d 795, 800, 805 (E.D. Va. 2002).

17

administrative measures that the Court concludes are reasonable in Mr. Abu Ali's circumstances.

First, Defendant is not entitled to special access to a laptop computer in his cell, a separate workstation, or access to unmonitored materials because no inmates in the Alexandria Detention Center are permitted these conditions, excluding Mr. Moussaoui, who is representing himself in an extremely complex case and faces the death penalty. Under the circumstances, Mr. Abu Ali is not entitled to greater privileges than those accorded other inmates. Second, the SAMs comport with the *Turner* factors: there is a valid, rational connection between the prison regulations and the government's legitimate national security interest put forward to justify them, there are no alternative means of allowing Defendant greater communication and association with other inmates or others outside the detention center, allowing greater communication or visits would have a significant impact on prison resources, and there are no alternatives. Furthermore, the SAMs do not violate Defendant's due process rights because they have not, and will not, restrict his ability to help prepare his own defense.

For the foregoing reasons, it is hereby

ORDERED that Defendant Ahmed Omar Abu Ali's Motion For Relief From Conditions of Confinement is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this ___24th___ day of October, 2005.

```
                                      /s/
                             Gerald Bruce Lee
                             United States District Judge
```

Alexandria, Virginia
10/24/05